UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SIMONE BRAXTON,

        Plaintiff,

v.

SELECT PORTFOLIO SERVICING, INC., et al.,

        Defendants.

Case No. 18-cv-03271-JSW

**ORDER DENYING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND DISMISSING CASE**

Re: Dkt. No. 81

Now before the Court for consideration is the motion for leave file a second amended complaint, filed by Plaintiff Simone Braxton. The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court HEREBY VACATES the hearing scheduled for March 29, 2019, and it DENIES Plaintiff's motion.

**BACKGROUND**

**A.    Procedural History.**

On June 1, 2018, Plaintiff filed her original complaint, which she amended as a matter of right on July 19, 2018 ("FAC"). Plaintiff originally asserted claims for relief based on alleged violations of California's Homeowner's Bill of Rights, breach of the implied covenant of good faith and fair dealing, and violations of California Business and Professions Code sections 17200, *et seq.* (the "UCL Claim").

Defendants, JPMorgan Chase Bank, N.A. ("Chase"), Select Portfolio Servicing, Inc. ("SPS"), and U.S. Bank NA, Successor Trustee to Bank of America N.A., Successor in Interest to LaSalle Bank N.A., as Trustee, on Behalf of the Holders of WAMU Mortgage Pass-Through

Certificates Series 2006-AR14 ("U.S. Bank"), moved to dismiss Plaintiff's FAC. On September 17, 2018, the Court granted, in part, and denied, in part, the motion to dismiss ("9/17/18 Order"). Although the Court dismissed most of Plaintiff's claims, the Court denied SPS's and U.S. Bank's motion to dismiss Plaintiff's third claim for relief, which asserted a violation of California Civil Code section 2923.7(b)(4).

As set forth in the Court's prior order, this is not the first case Plaintiff has filed to challenge the foreclosure proceedings. (*See* 9/17/18 Order at 2 n.2, 11:24-25.) As a result, the Court ordered that if Plaintiff sought leave to amend, she must file a motion. Plaintiff's original counsel subsequently moved to withdraw. After current counsel entered his appearance, Plaintiff filed the motion for leave to amend and filed the proposed second amended complaint ("PSAC"). With the exception of the UCL claim, which is now premised on different facts and theories, Plaintiff has abandoned all claims asserted in the FAC, including the claim the Court determined could proceed.[1] Instead, Plaintiff moves to amend to assert claims for: fraudulent transactions, fraud on the court, and securities fraud. (PSAC ¶¶ 32-46.)

**B.   Factual Background.**

This case arises out of a foreclosure on property located at 187 Catalina Drive, Hercules, CA (the "Property"). The Court previously set forth facts and allegations relating to Plaintiff's loan for the Property, her subsequent default, and foreclosure efforts. (*See* 9/17/18 Order at 1:24-2:9).

On September 15, 2006, Plaintiff obtained a loan in the amount of $624,000 from Washington Mutual Bank F.A. ("WaMu F.A.") (PSAC ¶ 11; Chase Request for Judicial Notice ("RJN"), Ex. 1, Deed of Trust.)[2] On January 1, 2005, WaMu F.A. merged with Washington

---

[1]   Although they still are named Defendants, neither SPS nor U.S. Bank filed an opposition to Plaintiff's motion for leave to amend. The Court's ruling is equally applicable to any claims asserted against these Defendants.

[2]   Chase requests that the Court take judicial notice of documents that are the type of documents for which the Court can take judicial notice, including publicly recorded documents and court filings. Plaintiff objects to the request for judicial notice. The Court will take judicial notice of the fact that documents have been recorded and the existence of the documents. The Court has not taken judicial notice of disputed facts set forth in those documents. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).

2

Mutual Bank and changed its name to Washington Mutual Bank, F.S.B. ("WaMu"). On September 25, 2008, the Office of Thrift Supervision closed WaMu and appointed the FDIC as Receiver. (PSAC ¶ 13.) On that same date, the FDIC transferred most of WaMu's assets to Chase pursuant to an asset purchase agreement ("APA"). (PSAC ¶ 13; RJN, Ex. 2, APA.) The APA includes a section on claims asserted by WaMu's borrowers:

> 2.5 Borrower Claims. Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

(APA, § 2.5.)

Chase purportedly assigned the beneficial interest in Plaintiff's loan to La Salle Bank NA as Trustee for WaMu Mortgage Pass Through Certificates Series 2006-AR15 Trust (the "Trust"). U.S. Bank is purported to be the successor trustee of the Trust. (PSAC ¶¶ 13-16; APA; RJN Ex 3, Assignment.) Chase serviced the loan until June 30, 2016, when SPS took over as servicer. The Property was sold at a trustee's sale on December 17, 2018. (RJN, Ex. 7, Trustee's Deed on Sale.) Plaintiff alleges she has received a Notice to Quit the Property. (PSAC ¶ 16.)

Plaintiff alleges that WaMu F.A. did not exist at the time she obtained the loan and, thus, lacked the legal capacity to enter agreements. Plaintiff alleges that Chase did not know what loans WaMu owned at the time it entered the APA with the FDIC. Therefore, it did not, and could not, know whether it acquired Plaintiff's loan and any representations that it had done so were false. Plaintiff also alleges neither Chase nor the SPS Defendants obtained the beneficial interest in the Deed of Trust. Therefore, she alleges they could not foreclose on the Property. (PSAC ¶¶ 17-26.) In sum, Plaintiff "contends that her threatened eviction is based upon fraudulent loan documents

1  which are void under federal and state law. [Plaintiff] seeks to enjoin her eviction, have her
2  alleged transactional documents declared void and expunged, and to secure from this District
3  Court an award of actual and punitive damages based on exposing a conspiracy to commit fraud
4  on [Plaintiff] and on this" Court. (PSAC ¶ 1.) Plaintiff also seeks to set aside the Trustee's sale
5  and the resulting foreclosure on her Property. (*See, e.g.,* PSAC, ¶¶ 36-37.)

The Court shall address additional facts as necessary in the analysis.

**ANALYSIS**

**A.    Applicable Legal Standard.**

Federal Rule of Civil Procedure 15(a) permits a party to amend a pleading once as a matter of right any time before a responsive pleading has been served. Once a responsive pleading has been served, however, the amendment requires written consent of the adverse party or leave of the court, which "shall be freely given when justice requires." Fed. R. Civ. P. 15(a). "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (citation omitted).

The Court considers five factors to determine whether it should grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment[,]" and (5) whether the moving party previously amended a pleading. *In re Western States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Each factor is not given equal weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining … factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052.

A court may decline leave to amend only if there is strong evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party …, [or] futility of amendment[.]" *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The non-moving party bears the

burden of demonstrating why leave to amend should not be granted. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

### B. The Court Denies the Motion.

#### 1. Prior Amendments.

The Court required Plaintiff to move for leave to amend because, having filed a nearly identical complaint in state court and having amended once as a matter of right in this case, the FAC was the third iteration of her claims. The Court concludes those amendments do weigh against granting Plaintiff leave to amend. *See Allen v. City of Beverly Hills,* 911 F.2d 367, 373 (9th Cir. 1990) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint") (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

#### 2. Bad Faith or Dilatory Motive.

Chase argues that this factor also weighs against granting leave to amend. The Court concludes there is no direct evidence of bad faith. However, in addition to her prior state court case, Plaintiff filed for bankruptcy protection four times after she received the first notice of default. Plaintiff did not raise these issues during the bankruptcy proceedings. Plaintiff's actions could be construed as evincing a dilatory motive. *See, e.g., Thompson v. JPMorgan Chase Bank, N.A.*, No. 16-cv-6134-BLF, 2017 WL 897440, at *7 (N.D. Cal. Mar. 3, 2017) (noting concern that "that [plaintiff's] litigation conduct as claimed by Defendants evinces bad faith and dilatory motive" but declining to resolve motion on that basis); *Jerviss v. Select Portfolio Servicing Co.*, No. 15-CV-01904-MCE-KJN, 2015 WL 7572130, at *7 (E.D. Cal. Nov. 25, 2015) (noting that assertion of baseless facts and legal theories to forestall an lawful foreclosure could show dilatory motive). The Court concludes this factor weighs against granting leave to amend.

#### 3. Undue Delay.

Chase argues Plaintiff has unduly delayed in seeking leave to amend, but delay alone will not justify denying her motion. *See Morongo Band of Mission Indians*, 893 F.2d at 1079. In order to assess whether Plaintiff unduly delayed in seeking leave to amend, the Court focuses on whether she "knew or should have known the facts and theories raised by the amendment in the

5

original pleading," rather than whether the motion to amend was timely filed. *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990)). "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (citations omitted).

Plaintiff filed this case in June 2018, and the pleadings are not yet at issue. However, Plaintiff's new claims are based on facts that date back to 2006 when she obtained her loan. Plaintiff was represented by counsel when she filed the prior state court case, and she did not pursue these claims at that time. Plaintiff also was represented by counsel during most of the bankruptcy proceedings, and she did not raise them then. Plaintiff also did not include them in either the original complaint or the FAC in this case. Plaintiff also has not provided an explanation as to why she did not, or could not, have learned these facts in the over ten years that have elapsed since she received the first Notice of Default. The Court concludes that Plaintiff delayed in seeking to assert these claims and that this factor weighs against granting Plaintiff leave to amend.

**4.     Prejudice.**

The Court next considers whether allowing amendment at this stage would prejudice Defendants. As this circuit and others have held, consideration of prejudice to the opposing party carries the greatest weight. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir.1987). Prejudice must be substantial in order for the Court to justify denying leave to amend. *Morongo Band of Mission Indians*, 893 F.2d at 1079. Chase argues that it would be prejudiced if the Court were to grant leave to amend because it has relied on the fact that Plaintiff neither challenged the validity of the debt nor its authority to foreclose on the Property in any of the prior proceedings she has filed. The Court concludes that this factor weighs against granting leave to amend.

6

### 5. **Futility.**

In its opposition, Chase focuses primarily on this factor and raises several arguments as to why it would be futile to grant Plaintiff leave to amend. The "proper test [for] determining the sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Some courts defer ruling on challenges to the merits of a claim until after a motion to amend has been resolved. In light of the procedural history of this case and Plaintiff's prior litigation, the Court declines to take that approach.

The allegations in the PSAC "are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

Plaintiff's new theory of liability is that Chase and the SPS Defendants have made fraudulent representations claiming that they are "beneficial owners" of the Deed of Trust and had the power to foreclosure on the Property when that was not the case. In the context of non-judicial foreclosure proceedings, "only the current beneficiary" of a deed of trust "may direct the trustee to undertake the nonjudicial foreclosure process." *Yvanova v. New Century Mortgage*, 62 Cal. 4th 919, 927-28 (2016).[3] "A foreclosure initiated by one with no authority to do so is wrongful for

---

[3] California courts have permitted a borrower to "challenge an assignment of his or her note and deed of trust if the defect asserted would void the assignment." *Glaski v. Bank of America*, 218 Cal. App. 4th 1079, 1095 (2013) (emphasis added). The California Supreme Court followed

7

purposes of" a wrongful foreclosure action. *Id.* at 929.

Chase argues that Plaintiff's claims are based on WaMu's purported misconduct and, as a result, they are barred because Plaintiff failed to exhaust administrative remedies provided by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). *See Rundgren v. Washington Mut. Bank, N.A.*, 760 F.3d 1056, 1060 (9th Cir. 2014); 12 U.S.C. section 1218(d)(13)(D)(ii). Chase also argues that Section 2.5 of the APA demonstrates that the claims asserted in the PSAC would fall within the scope of that section.

"FIRREA strips courts of jurisdiction over claims that have not been exhausted through" that process. *Rundgren*, 760 F.3d at 1060. In *Rundgren*, concluded it lacked jurisdiction to consider claims against WaMu and Chase arising out of a non-judicial foreclosure sale and set forth a framework to evaluate this issue: (1) does the plaintiff allege a "claim;" and (2) does the claim relate to "any act or omission … of an institution for which the [FDIC] has been appointed receiver[.]" *Id.* at 1059, 1061 (internal quotations and citations omitted).

The *Rundgren* court adopted the general meaning of the term "claim," *i.e.* "a cause of action or the aggregate of facts that gives rise to a right to payment or an equitable remedy." 760 F.3d at 1061. Based on that interpretation of the term, it determined the plaintiffs' "complaint clearly raises "claims" against WaMu and Chase for monetary and nonmonetary relief." *Id.* Turning to the second inquiry, the court noted the plaintiffs noted did not assert any independent claims against Chase and that "all claims rest on the theory that WaMu took deceptive and fraudulent actions to induce them to enter into a loan agreement, and their mortgage and note are therefore unenforceable." *Id.* at 1064. The court concluded the plaintiffs' claims were based on the act or omission of an institution for which the FDIC had been appointed receiver. It reasoned that "where a claim is *functionally,* albeit nor *formally*, against a depository institution for which the FDIC is receiver, it is a 'claim' within the meaning of FIRREA's administrative claims process. *Id.* (quoting *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1214 (9th Cir. 2012)

---

*Glaski* on the limited issue of "whether a wrongful foreclosure plaintiff may challenge an assignment to the foreclosing entity as void[,]" *i.e.* whether a borrower has standing to assert such a claim. *Yvanova*, 62 Cal. 4th at 935-41.

8

(omitting internal quotations) (emphasis as in *Benson*).  However, if a claim relates to the independent conduct of a third-party bank or conduct of a "purchasing bank's post-purchase conduct," it would not fall within the scope of FIRREA's exhaustion requirements.  *See, e.g., Willner v. Dimon*, 849 F.3d 93, 104 (4th Cir. 2017); *Benson v. JPMorgan Chase Bank, N.A.,* 673 F.3d 1207, 1215 (9th Cir. 2012); *American Nat'l Ins. Co. v F.D.I.C.,* 642 F.3d 1137, 1142 (D.C. Cir. 2011).

Here, as in the *Rundgren* case, Plaintiff's PSAC raises claims against Defendants for monetary and non-monetary relief.  Plaintiff argues that her claims against Chase are based on its own misconduct, not WaMu's and thus, the exhaustion requirements do not apply and Section 2.5 of the APA is irrelevant.  The Court is not persuaded.

Plaintiff's claims are premised on the assertion that Defendants are not the beneficial owners of the Deed of Trust, and thus could not legally foreclose on the Property.  Although Plaintiff's claims are formally asserted against Chase, SPS, and U.S. Bank, they are based on the allegation that WaMu FA lacked the capacity to make a loan and, thus, all subsequent assignments of that loan are void.  The Court concludes those are subject to FIRREA's exhaustion requirements.  Accordingly, the Court lacks jurisdiction to consider them.  *See Rundgren,* 760 F.3d at 1065; *Hilton v. Washington Mut. Bank, N.A.*, No. 09-cv-01191-SI, 2009 WL 3485953, at *2-*3 (N.D. Cal. Oct. 28, 2009); *cf. Willner*, 849 F.3d at 104-05 (concluding exhaustion required for claims formally asserted against Chase and U.S. Bank, which included allegations that WaMu FA did not exist when the plaintiffs closed on the loan and allegations that the defendants never acquired an asset that became part of the receivership estate).

Assuming for the sake of argument that Section 1821(d)(13)(D)(ii) does not strip the Court of jurisdiction over the new claims, the Court would still deny the motion.  As discussed above in Sections 3 and 4, Plaintiff has never challenged the validity of the original loan or Defendants' authority to foreclose on her property, including during the 2010 bankruptcy proceedings.  The Bankruptcy Court in that case granted relief from the automatic stay.  (RJN, Ex. 14, Order Granting Relief, ¶ 4 (finding that Bank of America, N.A., as successor by merger to La Salle Bank NA, as Trustee for WaMu Mortgage Pass Through Certificates Series 2006 AR-14, "is

9

authorized to foreclose its security interest in the Real Property under the terms of the Note and the Deed of Trust"). "An order confirming a Chapter 13 plan is res judicata as to all justifiable issues which were or could have been decided at the confirmation hearing." *In re Evans*, 30 B.R. 530, 531 (9th Cir. BAP 1983); *see also Siegel v. Fed. Home Loan Mortgage Co.*, 143 F.3d 525,528-29 (9th Cir. 1998). The efforts to foreclose on the Property began over ten years ago. Apart from the fact that she now has different counsel, Plaintiff does not allege any facts to show why she could not have discovered the facts that give rise to her new claims during that time. Finally, Plaintiff's allegations stem from the assertion that when she originated the loan, WaMu had changed its name, was not a legal entity, and had no capacity to enter into a loan with her. "Plaintiffs in foreclosure cases like this one have repeatedly advanced that theory, and courts have repeatedly rejected it." *Burke v. JPMorgan Chase Bank, N.A.*, No. 13-cv-4249-SC, 2015 WL 2198319, at *4 n.1 (N.D. Cal. May 11, 2015); *Lanini v. JPMorgan Chase Bank, N.A.*, No. 13-cv-00027 KJM EFB, 2014 WL 1347365, at *5 (E.D. Cal. Apr. 4, 2014) (citing cases). The Court concludes that the allegations regarding WaMu's name are not sufficient to support the allegations that Plaintiff's loan, Deed of Trust, and subsequent assignments of those documents are void. The Court also has considered the remaining allegations, and it concludes that Plaintiff has not alleged facts that could give rise to the conclusion that any of the documents at issue are void, rather than voidable.

Accordingly, the Court concludes that it would be futile to grant Plaintiff leave to amend.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for leave to file a second amended complaint. Because Plaintiff abandoned the claims asserted in the FAC, the Court dismisses this case. The Court shall enter a separate judgment, and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 14, 2019

_____
JEFFREY S. WHITE
United States District Judge